The only other case for this morning? 15-13-64 James McKinney v. Bonita J. Hoffner Oral argument. That's what we see. 15-15-4-5 Mr. Gerald Schrodenboer for the respondent appellate section. Morning. Yeah, good morning. May it please the court. Jerry Schrodenboer, Jackson. Special Assistant Michigan Attorney General for respondent appellate. I'm asking for two minutes rebuttal time. You may. Please proceed. Thank you. Two months ago, in the case of Lewis v. Curtin, Judge McKeague started oral arguments not with quite these words, but by noting that the Supreme Court has repeatedly emphasized just how narrow habeas review is, and it's opinions like Judge Botani's in this case that do not meet these narrow confines, particularly relying on state precedent for the key point. And I'm asking the court to follow the law and reverse. There is no clearly established Supreme Court precedent that says, well, that's fine, but like I said, is interrogation. At least neither McKinney nor Judge Botani have cited any. My impression reading this and then watching again the video of the interview was that it's very possible that had Mr. McKinney not interrupted the police officer, that had he completed whatever that statement was intended to be after the plaintiff had invoked the right to counsel, that it could have been interrogation. There are two responses to that. Yes, that is true. The interesting part about this case is even if he had intended it to be interrogation and even if we assumed that whatever he might have said would have been reasonably apparent to a police officer that would elicit an incriminating statement, he got interrupted. He didn't have a chance to interrogate the guy. That's right. That's one of my points. So is that your argument, basically? That is one of the arguments. Have you found any other cases where there's sort of these truncated statements? No. And then we're supposed to figure out what to do with it? No, and of course, in a habeas, the burden then, it says, since we don't have a Supreme Court case that deals with that, therefore, we deny relief. The other thing is, it is possible, it is plausible, that he was talking about something else, but like I said, obviously refers to something within the previous five minutes. Earlier, he gave Miranda warnings. It is possible, plausible, that what he was saying is, I have it a little further on, but like I said, you have the right to remain silent and I cannot talk to you anymore. Here's the concern for me. Okay. I'm struggling with what is the right test to apply. And I'm looking at the decision of the Michigan Supreme Court that holds, in a pretty short statement, that it wasn't invoked. And looking back at the Supreme Court law, it seems to me that the first question is, what did McKinney's statement, I just as soon wait until I get a public defender or whatever, what does that statement, standing alone, mean? Because that was the first statement that he made. Why isn't that an invocation of the right to counsel? We have assumed the entire way through that that is an invocation. That that is? Yes. So the question becomes, what has the Supreme Court told us to do when we have an invocation of counsel? If you have an invocation of counsel, I'm looking through at Davis and Smith, and it seems to me that they make very clear that the Supreme Court has established a rule that tells us how to evaluate this. And the rule says, if the accused invokes his right to counsel, courts may admit his responses to further questioning only on a finding of two steps, that he initiated further discussions with the police and that he knowingly and intelligently waived the right he had invoked. And in fact, the majority opinion says, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked. Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together. Yes. So why isn't that our test? Well, to a large extent, it is the test. But the real test is... I don't think anybody disagrees that that's the test, do they? Okay, so the statement that we have afterwards, the second statement is, I would say, a pretty clear initiation of further discussions with the police. That's correct. But where in the record in a court finding, even in your argument, is there the claim that the second step is met, that this defendant knowingly and intelligently waived the right he had already invoked? And that comes down to a case called Davis v. Carpenter, which came out of this court last August, 798 F. 3rd 468 at page 474. It doesn't matter. In habeas cases, we review the state's court's decision, not the court's... But what was the decision? What was the decision here? The decision is... The decision was he did not invoke. That's correct. Your argument is he invoked and then he stepped away from it by his second statement. We've already had the, I just as soon wait until I get a public defender or whatever. Standing alone is a clear invocation. That is not the decision. That is not the Michigan Supreme Court decision. The decision is the confession comes in. That is possibly the reasoning. I disagree that that's the reasoning. But what this court said for our task, we do not review the state's court's, we review the state's court's decision, not the intermediate reasoning. For our task is to determine what arguments or theories supported the state court decision or could have supported. Fair-minded jurists could disagree. And I don't dispute that. But what this decision says is he is just as soon wait and willing to discuss, that's the second statement, are not an unequivocal assertion of the right to counsel. But you and I have already just said here that that first statement is in fact a clear invocation of the right to counsel. So Smith tells us, got an invocation, here's what we do. We ask two questions. Did you reopen discussions and did you knowingly and voluntarily waive? I'd say, my guess, he reopened. That's what that statement says. Yeah, I'll talk to you about the other circumstances. But where do we have anywhere, even in your briefing, that says he also engaged in a knowing and voluntary waiver of the right that he had invoked? But Smith is contingent on one other thing, that there was intermediate interrogation. If there is no intermediate interrogation, it can go on. That statement... You know, show me where... I understand that most of these cases do talk about intermediate interrogation, without question, because what they're looking to is the ultimate confession. But it seems to me we have a case here that is the pure Smith case. We have an invocation. He said, like we recognized in our Kiger case, I'd just as soon wait until I get a public defender. So we've got the invocation. Now, what does the United States Supreme Court tell us to do with that? It says don't merge invocation and waiver or distinct inquiries, don't blur them. So we've got two steps, it seems to me, and I'm not seeing where we've got the knowing involuntary waiver. It says you do that if there has been interrogation, intermediately. If there has not been interrogation, then we don't have to worry about that. And there was no interrogation in this situation. Isn't the case law pretty clear that if somebody invokes the right to counsel, and let's say there's no further discussion or statements from the police, you invoke the right to counsel, and then you just keep talking? You've invoked and you waived. The harder question is, did the police do something that overbore somebody's will that then caused them to stop talking after they've already invoked? And that's why we're focusing on this little phrase here. That is correct. That is exactly the way to look at it. And in order to even take the second statement that he made into account to see in totality if he really unequivocally invoked, you have to determine whether that statement that the police officer made is interrogation. That is correct. And if it is interrogation, you can't take that second statement into account at all. You can't take it into account to figure out what he meant by the first statement, and you can't consider it to be a statement against his interest. That is correct. So your position is that the Miranda law requires a police officer to come in and read you your rights about the right to remain silent and the right to have counsel. And you can say to that police officer, I want an attorney. And then the police officer can say, OK, would you like some coffee? I think we'll be here another few hours. How's your family? Did you know anybody else in the case? And continue with this discussion engaging the person and holding them at that location. And as long as somebody can say there was no interrogation, no matter how long you're held, we don't do what Smith says. We don't have to ask if the defendant re-engaged and then ask if he knowingly and voluntarily gave up his right. You're just going to assume if he ever begins to talk about it again, he is knowingly and voluntarily waived his right. I kind of thought that was what this was all about, was not being able to overbear someone either by placing them in a situation in which they had to respond or had to wait or were effectively a captive audience and overbearing their will. Once they have said, I invoke my right to counsel. Okay, a few things. In the first place, that's pretty much what the Simpson case from this circuit said. Was there... Look at Simpson. I didn't see a clear invocation in Simpson. I think Simpson is a completely different matter. We have here... You asked him a lot of questions. I did. Do you want him to answer your questions? Sorry, please answer. In the second place, you watched the... I sure have. Sure you have. And there is no overbearing in there. And we're not talking overbearing with a truncated statement. And especially, we're not taking a look at U.S. Supreme Court case. Let's not forget the AADPA standard, which is the most important thing here. Other than that, I'm getting very close... Let me just ask you to summarize because I'm struggling with what test should apply. And I'm looking at Supreme Court cases. And I'm just trying to figure out, in this kind of situation, don't we apply what Smith says? Because we have an invocation and then we have the two steps. But your position is that those two... Do you ask or reinitiate? And did you knowingly and voluntarily waive? Never come up unless somebody makes a determination that interrogation occurred. Yes. That's your position. That is correct. And the way that Judge McKeague was analyzing it is absolutely 100% correct. Thank you. And in that situation, I ask the court to affirm. Judge Batchelder, before... Sorry, reverse. Did you have any questions? No, thank you. All right. Thank you. You'll have your rebuttal. Thank you. Good morning, Your Honors. Brett DeGroff from the State Appellate Defender Office on behalf of James McKinney. Your Honors, the prosecution has asked you to review the state court decision, and I agree. That's what we should do. The district court summed it up best when she said the Michigan Supreme Court unreasonably ignored the fact the petitioner made his second statement only after the detective responded to his unequivocal request for counsel. And that's exactly right. The Michigan Supreme Court said to Mr. McKinney's two statements that the second statement followed immediately after the other, but that's not right. The second statement happened only after the detective intervened with further interrogation. Well, that's really kind of semantics. If you watch the tape, he invokes. I don't think anybody disputes that. The detective then says, what is it, about five words before he gets interrupted. This is all just one continuous sequence. In discussing it, we can put periods, and periods do appear on the piece of paper, but it's just one continuous dialogue here. Well, we don't see... A transcript really wouldn't necessarily show whether there are any gaps or pauses or hesitations or anything like that, but we have the benefit of the videotape that you would concede doesn't show any of that. Well, in the videotape, my client clearly invokes his right to counsel, and I think both men pause for a moment. And I think we agree with that. And then the detective says, well, that's fine. And if that's all he'd said, this might be a different case. And if they'd walked Mr. McKinney back to his cell, but that's not what he did, he continued, and he said, but like I said. And he's talking about his earlier attempts to get Mr. McKinney to talk to him. So is it your position, so you understand the test that's been articulated as requiring an interceding interrogation in order to consider the second statement? Judge Gerentz, I agree with you that my client did not knowingly and voluntarily waive his right to counsel. I also believe, and I'm arguing, that Smith is specifically violated because there was intervening interrogation. And Smith tells us... I think what we're trying to figure out is, do you agree that we have to look at whether this statement, well, that's fine, but like I said, is or is not interrogation. Is that important or critical to the end resolution of this case? If that is interrogation, I think Duck Smith definitely says that my client's statement should have been suppressed. I suspect everybody agrees with that, too. But if it's not interrogation, then is there a violation here of clearly established Supreme Court law if that's not interrogation? So, if that's not interrogation, I agree with Judge Strach's discussion that there's not a knowing and voluntary waiver of the right to counsel. But I don't concede that that was not interrogation, and that's certainly the argument I hear. So you think you win whether it's interrogation or even not interrogation? Yes, but I think that the hypothetical that it's not interrogation is not... I believe it's interrogation. I believe Ennis is very clear. I'm not asking you whether you agree or disagree that it's interrogation. I get that. I'm just asking you, which I think is the same thing Judge Ranch is asking you, if it isn't interrogation, if we find it's not interrogation, is there a violation of Smith or any other clearly established Supreme Court law? The violation if it's not interrogation would be that there's not a knowing and voluntary, subsequent knowing and voluntary waiver. Well, how do we determine that? Judge Strach wants to know what the test is. Does that mean that they would have to re-Mirandize him again after he makes his unequivocal invocation? The detective says, well, that's fine. But like I said, at that point, he interrupts him. So was the detective then supposed to stop him and say, wait a minute, you can't say anything more unless I re-Mirandize you again? Just trying to figure out what you want us to say in this case. Well, first and foremost, I think I want the court to say that the detective's intervening statement was interrogation. I mean, that's the primary argument that we've made. And I think Ennis is very clear. When you apply the Ennis test, the test is, would the detective should have known that his statement was reasonably likely to elicit an incriminating response? And what are the possible responses to, yeah, but like I said, were they for Mr. McKinney to respond with his weight or his birth date or any of those kind of booking questions? No, of course not. Those wouldn't have been responsive. The only two things that could have been responsive to the detective's intervening question are, no, I still want to invoke my right to counsel, or I guess maybe I should talk to you. And that's clearly what the detective was after. So that was interrogation. All these arguments about whether it is or is not interrogation are covered very well in your brief. We get all that. All I want to know, and if there isn't an answer, just tell me you don't know. That's fine. If it isn't interrogation, then where do we go from there? If it isn't interrogation, then I agree with Judge Strach that it's hard to see from this situation a knowing and voluntary waiver of the right to counsel. It's not unusual in the Supreme Court law to recognize the fact that throughout proceedings a right to counsel can be invoked and waived and invoked and waived. We've got that statement throughout. It's in Davis, the recognition that this is a right that can be claimed at any stage of the proceeding. So what I'm struggling with is when you're doing this, I'm invoking now, and then I'm waiving, and then two days later you invoke again, what is the test that we look to? How do we figure out? It's not one time you're done. It's clearly a right that you can re-invoke, and in order to do that, I'm looking at Smith and trying to understand what does Smith want us to do, and it seems to me that Smith is pretty clear. What you do is you ask, did they reopen that door, and did they knowingly and voluntarily waive, and why wouldn't we apply just the normal principles to make that determination? It's not a question of rewarning them. It's a question of whether the evidence suggests that I who have made a clear invocation have now changed my mind, agreed to talk to you, and knowingly and voluntarily waived what I invoked. Why wouldn't that just be looking at that situation and saying is there indication of knowing involuntary waiver? And that's what I'm not finding in this record. I agree with you, Your Honor, and to Judge McKeague's point... If that's the answer to wherever the question was buried in there, he then says we can talk over all the other circumstances. How can you not read that to be an unequivocal invocation that he's willing to talk? There's nothing in that statement that suggests the knowing involuntary waiver, the understanding of his right and the willingness to forgo it. That goes back to the question of whether you have to Mirandize him again, and even Judge Strand says that that's not the question. He had just had his Miranda warnings, what, two minutes before this? Well, Your Honor, you asked... He gets his Miranda rights. He says I want to talk to a public defender. Six, seven words are then said, and then he goes on to say we can talk over all the other circumstances. How would you read that phrase of his to say that he's not knowingly and voluntarily agreeing to talk? Your Honor, you asked what should the police have done, and the answer to that, I think, is they should have done what Mr. McKinney asked. They should have given him a public defender. If they had done that, they would have honored Smith v. Illinois clearly, and it wouldn't have been a borderline case at all. So you say we don't look to what they did do to determine whether it was or wasn't an interrogation. They can't say anything at all? They can... There are plenty of cases that say they can do things like continue with routine booking questions, administrative matters. Is there any... What's your best case that says that a phrase... from the Supreme Court that says a phrase, well, that's fine, but like I said, that's then interrupted by a defendant who says that he is willing to talk about other circumstances clearly establishes the law that that was interrogation? Just give me your best case. Best case is Rhode Island v. Innis, Your Honor. All right. And I mean, when we apply that test to this intervention by the officer... You realize that you lost, or if it had been your case, that you lost, that the petitioner claiming that his Miranda rights were violated lost in Innis? I do, Your Honor, but this case is better than Innis. There are several distinguishing factors. I mean, certainly Innis gives us the test about what is interrogation. So it's always the test that we have to apply. And there are key differences in this case from Innis. In Innis, it was not a formal interrogation. The defendant was being transported by the police. This is a formal interrogation. He's been sat down. He's got his coffee. They're clearly in it for the long haul. He's been read his rights. In Innis, the officer's statements were not directed at Mr. Innis. They were directed at each other. Here, the detective is talking to my client. He's trying to get my client to keep talking. And most importantly, the big distinction, I think, between Innis where the court said it was not interrogation and this case where it is, is we apply the test itself. And we ask what would the officers reasonably have thought a response would be incriminating. In Innis, when they're talking to each other, you might reasonably think that the suspect wouldn't reply at all, that he would just sit quietly in the back seat. But here, that's not the case. There was going to be a response. They're sitting alone at a table in a room, and the statement called for a response. And what response might it have been? A routine booking answer? No. The only two responses that would have been responsive were, I want to continue to invoke my right to counsel, or I've rethought it, I don't want to. Why would the portion of the sentence that the detective got out be reasonably thought to invoke a response at the time that your client interrupted him and said he's willing to talk about other circumstances? I'm not exactly clear what you're asking here. Well, let me ask it another way. One of the odd parts about this, what I think makes this hard, is that we're trying to figure out the import of what the detective said after he invoked his right to counsel. When he didn't even get the full sentence out. So that's why I was talking to Mr. Schotenberg, that it may well be possible that had the police officer completed his sentence, phrase, whatever it was going to end up being, that it would be fairly easy to tell whether it was or wasn't interrogation. But he only got seven words out before he gets interrupted. So what is there about those seven words that would show a reasonable police officer that starting out whatever he was going to say with those seven words crosses the line? We know what he's talking about already. But contrary to what you said, Mr. McKinney, like I said, like I said to you earlier when I want you to give me your side of the story, but like I said is contrary to what you said about the fact that you want an attorney, I'd like you to refer to my previous statements where I've said it's really in your best interest to talk to me now and give me your side of the story. That's what he's saying. Mr. McKinney knew that. We look at that and we all know that's what the officer's talking about. So we should ignore the first three words, the well, that's fine. You're not relying upon those. No, if he'd stopped there, then Mr. McKinney... So this whole case then turns on whether the words quote, but like I said, end quote, turns on what those mean and would a reasonable person have assumed that that was interrogation. Is that right? There might be a further discussion about whether the right was knowingly voluntarily waived aside from that, but if that is interrogation and I'm definitely arguing that it is, then Smith has been violated. And you think that Innis answers the question as to whether those four words are interrogation? Absolutely. Clearly. And not only does it answer it, it answers it clearly. Very clearly, Your Honor. Okay, fair enough. I think that pretty well spells it out. Judge Schrantz, do you have any more questions on that? Thank you. I didn't mean to cut you off. Any more you want to say? No, Your Honors. Thank you very much, and for those reasons we'd like you to affirm the district court's conditional grant to the writ of habeas corpus. One quick question on the Supreme Court of Michigan's decision. I'm trying to figure out from the language that is there how you reached the determination that the case hinges on interrogation. Because what the decision says it's an unequivocal, there was not an unequivocal assertion. It cites Davis, cites to 457 at Davis that is really just a generic explanation of Miranda rights. How do you lead into understanding that this is an argument over interrogation? Two reasons. In the first place, that is the only argument that was made to the court and it just shot, it just went straight over it. The second reason, because this is AEDPA and I was citing Davis versus Carpenter, it says it doesn't matter what the decision is, I'm sorry, it's the decision that we look at, not the intermediate reasoning. If we can come up with You can posit an argument, so this is the argument that you posit. They must have been looking at interrogation. That's all. Isn't it true Mr. Shurtenberg that the Michigan Supreme Court took the further phrase, well we can talk about those other circumstances into account in determining whether or not he had clearly and unequivocally invoked his right to counsel. Yes they did. Now the only way under Supreme Court law that they're allowed to look at that further statement is if the intervening statement is not interrogation. Absolutely. So while they don't say that they had to have concluded that it wasn't interrogation and because the issue was presented to them and there's no other indication that they didn't understand that issue under Harrington versus Richter, they don't have to say anything about it, that must be what they meant. Absolutely. Isn't that basically the way the analysis goes? Yes. Davis versus Carpenter cites to Harrington. That is correct. That is absolutely correct and the thing is those four words, the reality is yes, what those four words mean but also is there a Supreme Court case that says that those four words are that way or unreasonable application. Not an extension but an application. And I am citing, oh I'm sorry, citing two cases on that, they're general statements but Jones versus Bell from last August, Judge McKeague's opinion, the criminal defendant asked to represent himself and Ferretta versus California is very established, we know that but in Ferretta he had asked a few weeks ahead of time, in Jones he asked the day of trial. We're always flattered when you cite Sixth Circuit cases if we authored them and if we were on the prevailing side. But hasn't the Supreme Court clearly told us that the only circumstances under which we can look at circuit law is to see if the circuit has interpreted a Supreme Court case correctly or incorrectly in a certain way and it's thereby binding on us under the panel rule. The Supreme Court has said we can't look at circuit law to develop or evolve or interpret the Supreme Court's decision to determine if it's clearly established. That's not what I'm asking you to do. So with that in mind, if we agree on that, tell us, it would just be really helpful if you wouldn't mind, is when you cite circuit law, tell us what's the purpose of citing the circuit law? The analysis that you used, what you said was there is no Supreme Court case that bridges the gap. In other words, the same thing in the present case. You don't need circuit law to say that, the Supreme Court has told us that a dozen times. That's right. In the present case, there is no case that bridges the gap between Innis and these four words I ask the Court to reverse. Thank you.